IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| DANIEL HANIC, and all others similarly situated, et al., <br><br> Plaintiff, <br><br> vs. <br><br> BUREAU OF INDIAN AFFAIRS; and DEPARTMENT OF THE INTERIOR, <br><br> Defendants. | CV 14-216-M-DLC-JCL <br><br> FINDINGS AND RECOMMENDATION |

Defendants Bureau of Indian Affairs and the Department of the Interior (collectively referred to as "the BIA") move pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss this action for lack of subject matter jurisdiction, or for failure to state a claim upon which relief can be granted. For the reasons detailed below it is recommended that this action be dismissed for lack of subject matter jurisdiction because Plaintiff Daniel Hanic's claims are moot.

**I.** **BACKGROUND**

Hanic, appearing pro se, commenced this action by filing a "Motion for Writ of Mandamus" by which he seeks to compel the BIA to commence probate proceedings with respect to his mother's estate.

1

Hanic's mother, Juanita Marie Jacobson, was an enrolled member of the Confederated Salish and Kootenai Tribes of the Flathead Indian Reservation. At the time of her death on June 1, 2009, she possessed an interest in tribal trust land.

After Jacobson died Hanic attempted several times to have the BIA commence probate proceedings with respect to Jacobson's estate. In response, the BIA informed Hanic it could not proceed with the probate process until after authorities located Jacobson's surviving husband, John Jacobson.

Hanic asserts the probate proceedings are important to him because he is eligible to receive proceeds from the settlement of the *Cobell* case.[1] But he will not be eligible to participate in that settlement until after it is legally established, through Jacobson's probate proceedings, that he is an heir to Jacobson's estate. Through this action, Hanic seeks mandamus relief compelling the BIA to commence Jacobson's probate proceedings. And he asks for declaratory relief establishing that he is an heir of Jacobson's estate.[2] Hanic expressly relies upon

---

[1]*See Cobell v. Salazar*, 573 F.3d 808 (D.C. Cir. 2009) (addressing class action lawsuit against the United States for alleged mismanagement of individual Indian money trust accounts).

[2]Consistent with Hanic's allegations in his pleading, he clarifies that the specific subject of his eligibility for, and receipt of, proceeds from the *Cobell* settlement is not at issue in this action. (Doc. 18 at 2-3 of 5.) Hanic's reference to the *Cobell* settlement is merely his explanation of why he is trying to compel the probate process. Therefore, contrary to the BIA's suggestion, the Court will not

2

the federal statute providing district courts with the authority to grant mandamus relief at 28 U.S.C. § 1361.

## II. APPLICABLE LAW

### A. Jurisdiction – Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1), Fed. R. Civ. P., provides the proper procedure for challenging the existence of a court's jurisdiction. A defendant may pursue a Rule 12(b)(1) motion either as a facial challenge to the jurisdictional allegations of a pleading, or as a substantive challenge to the facts underlying those allegations. *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). A facial challenge is one which contends the allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

The success of a facial challenge depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Therefore, in addressing a facial challenge the court must assume the allegations in the complaint are true, and it "must draw all reasonable inferences in [plaintiff's] favor." *Id*. *See also Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).

---

treat Hanic's reference to the *Cobell* settlement as an independent claim for relief.

3

The plaintiff bears the burden of proving the existence of jurisdiction in response to a challenge under Rule 12(b)(1). *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

### B. Pro Se Pleadings

Because Hanic is proceeding pro se the Court must construe his pleading liberally, and the pleading, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). *See also Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Nonetheless, pro se litigants are "bound by the rules of procedure." *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

## III. DISCUSSION

The BIA moves to dismiss this action under Rule 12(b)(1) on the ground that because it enjoys sovereign immunity from liability for the claims advanced by Hanic subject matter jurisdiction is lacking. The Court disagrees that Hanic's claims are barred by sovereign immunity. But it agrees with the BIA's alternate argument that Hanic's claims are properly dismissed as moot.

### A. Sovereign Immunity

The doctrine of sovereign immunity "shields the United States from suit absent a consent to be sued[, or waiver of sovereign immunity,] that is

4

'unequivocally expressed[]'" in the text of a federal statute. *United States v. Bormes*, ___ U.S. ___, 133 S. Ct. 12, 16 (2012) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992)). The immunity extends to the agencies of the United States. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994).

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011) (quoting *United States v. Mitchell*, 463 U.S. 206, 212 (1983)). A court's jurisdiction over any suit against the United States may be based only upon "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver." *Jachetta*, 653 F.3d at 903 (quoting *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003)).

The party asserting a claim against the United States bears the burden of identifying an unequivocal waiver of immunity. *United States v. Park Place Associates Ltd.*, 563 F.3d 907, 924 (9th Cir. 2009).

Hanic advances his claims pursuant to the statutory authority for mandamus relief at 28 U.S.C. § 1361. Section 1361 provides as follows: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel

an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

Section 1361 permits the federal courts to force a federal officer or agency representative of the sovereign to act in accordance with obligations imposed upon the federal government – the sovereign. "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty[]'" that the sovereign must perform. *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988). Specifically, mandamus may properly be used to compel an agency or official to perform a duty if: "(1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (quotations and citations omitted).

As correctly noted by the BIA, the mandamus statute does not constitute a general waiver of the United States' sovereign immunity. *Mashiri v. Department of Education*, 724 F.3d 1028, 1031 (9th Cir. 2013). But due to its unique role in requiring the sovereign to act, the statute permits mandamus relief in situations to which sovereign immunity is wholly inapplicable. The statute is directed at remedying conduct committed by a federal officer or agency that does not

constitute conduct of the sovereign. *Id*. at 1032 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) and *Dugan v. Rank*, 372 U.S. 609 (1963)). Section 1361 authorizes a court to compel an agency to perform an act which the sovereign has required it to perform, or to compel an agency to comply with statutory limitations on its authority when the agency has acted beyond those limitations. *Mashiri*, 724 F.3d at 1032. In either situation, the purpose of the statute is to correct the ultra vires actions of an officer or agency, not to interfere with an officer or agency's actions properly performed in an official capacity on behalf of the sovereign. *Id.* It is those ultra vires actions that are properly the object of the specific relief permitted under section 1361 and, therefore, no waiver of sovereign immunity is needed. *Id*. (citations omitted). *See also Trackwell v. United States*, 472 F.3d 1242, 1244-45 (10th Cir. 2007) (concluding sovereign immunity is inapplicable to, and does not bar, a claim properly falling within the authority of section 1361).

In this action, Hanic asserts the BIA has failed to act as required by specific federal statutory and regulatory directives. For the reasons discussed, the Court agrees federal law requires the BIA to act as Hanic alleges.

Federal law requires that in certain circumstances the Secretary of the Interior must conduct the probate process with respect to the estate of an Indian

7

who, like Jacobson, dies intestate.[3]  Specifically, the Secretary is required to "ascertain the legal heirs of such decedent[.]"  25 U.S.C. § 372.

The details of the probate procedures are set forth in federal regulations promulgated under authority of several federal statutes including 25 U.S.C. § 372. Although the regulations prescribe extensive and detailed procedures for the probate process, the basic steps of the process (as described from the perspective of the employees working for the Secretary of the Interior) are:

> (a) We learn about a person's death (see subpart B for details);
>
> (b) We prepare a probate file that includes documents sent to the agency (see subpart C for details);
>
> (c) We refer the completed probate file to [the Office of Hearings and Appeals] for assignment to a judge or [Attorney Decision Maker] (see subpart D for details); and
>
> (d) The judge or [Attorney Decision Maker] decides how to distribute any trust or restricted land and/or trust personalty, and we make the distribution (see subpart D for details).

25 C.F.R. § 15.11.

---

[3]The specific circumstances which trigger the Secretary's obligation to initiate the process to probate an Indian's estate are when the person was one "for whom the United States holds an interest in trust or restricted land or trust personalty."  25 C.F.R. § 15.1(a).  *See also* 25 C.F.R § 15.10(a) and 43 C.F.R. § 30.102(a).  The BIA does not dispute that Hanic's allegations regarding Jacobson's estate fall within the circumstances invoking the process to probate her estate.

The probate process "begins" when the Secretary is informed of the death of an individual whose estate the Secretary is obligated to probate. 25 C.F.R. § 15.103. The Secretary then prepares the "probate file" which requires the Secretary to determine the identity of potential heirs to the estate. 25 C.F.R. §§ 15.105(d), 15.201, and 15.202(b). Once the probate file is complete, the Secretary forwards the file to the Office of Hearings and Appeals within the Department of the Interior for adjudication. 25 C.F.R. §§ 15.401(a) and 15.402. As part of the probate process a judge within the Office of Hearings and Appeals is required to determine the heirs to the estate. 43 C.F.R. § 30.120(c).

As outlined, the Department of the Interior, through its Secretary and the BIA, is obligated to commence the process to probate the estate of a deceased Indian in certain circumstances. Hanic's allegations assert the circumstances of Jacobson's estate render it the type of estate which the BIA must probate. Hanic asserts the BIA has been notified of Jacobson's death, that he has attempted to get the BIA to commence probate proceedings with respect to her estate and determine the heirs to her estate, but that the BIA has refused or failed to commence that process. Having allegedly failed to commence the probate process, such ultra vires conduct of the BIA is properly the subject of the mandamus statute. In accordance with *Mashiri*, supra, sovereign immunity does

9

not operate to bar Hanic's claim. Rather, the express language of 28 U.S.C. § 1361 grants this Court jurisdiction over Hanic's claims. Therefore, this case is not subject to dismissal for lack of jurisdiction due to sovereign immunity, and the BIA's motion should be denied in that respect.

   B.   **Mootness**

The BIA asserts that it has commenced the process of probating Jacobson's estate and, therefore, Hanic's claims are moot. The Court agrees.

Article III of the United States Constitution requires that a live case or controversy must continue to exist at the time that a federal court decides the case, not just at the time the lawsuit was filed. *California Association of Rural Health Clinics v. Douglas*, 738 F.3d 1007, 1017 (9th Cir. 2013) (quoting and citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987), *Sosna v. Iowa*, 419 U.S. 393, 402 (1975) and *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)). "If an action or a claim loses its character as a live controversy, then the action or claim becomes 'moot,' and [the federal courts] lack jurisdiction to resolve the underlying dispute." *Id*. (quoting *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797–98 (9th Cir. 1999)). The court is thereby divested of jurisdiction to consider the merits of the action. *Independent Living Center of Southern California, Inc. v. Maxwell-Jolly*, 590 F.3d 725, 727 (9th Cir. 2009). A moot action must be dismissed for lack of subject

matter jurisdiction. *Foster v. Carson*, 347 F.3d 742, 745 (9th Cir. 2003) (citations omitted).

The BIA represents that on March 8, 2010, the Confederated Salish and Kootenai Tribes, acting on behalf of the BIA, commenced the probate process with respect to Jacobson's estate, and began preparing her probate file. (Doc. 12-2 at 3 of 4.) The BIA further asserts that on November 13, 2014, it engaged a contractor to assist in locating Jacobson's husband, John Jacobson. (*Id*.) As noted, the probate process commences when the BIA receives notice of an individual's death and it begins to prepare the probate file. *See* 25 C.F.R. §§ 15.103 and 15.201. Thus, the record reflects that the BIA has commenced Jacobson's probate process.

In response to the BIA's assertion that it commenced the probate process, Hanic concedes the BIA has "finally initiated the act of 'referring' to a 'contractor' the act of investigating into the whereabouts of [John Jacobson]." (Doc. 13 at 2 of 4.) The BIA argues this concession is an admission by Hanic that his claim for mandamus relief is moot. The Court agrees.

Hanic's statements in his brief constitute an admission that the BIA has, in fact, commenced the probate process. The Court has discretion to treat a party's statements made in a brief as judicial admissions binding upon the party. *Gospel*

*Missions of America v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003); *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226-27 (9th Cir. 1988). Under the circumstances of this case, the Court will treat Hanic's statements as an admission that the probate process he seeks to compel through his mandamus action has already commenced.

Based on the foregoing, and in view of Hanic's admission, there no longer exists a live case or controversy with respect to his claim for mandamus to compel the BIA to initiate Jacobson's probate process.[4] Where a federal agency has since complied with the very duty imposed under federal law that the plaintiff seeks to enforce in the mandamus action, then the claim for mandamus relief under 28 U.S.C. § 1361 is moot. *Heily v. United States Department of Defense*, 896 F. Supp. 2d 25, 35-36, (D.D.C. 2012). *Mohammed v. Holder*, 695 F. Supp. 2d 284, 289-90 (E.D. Va. 2010). Therefore, the Court concludes this action is moot, and is subject to dismissal for lack of jurisdiction.

---

[4]In his briefs Hanic argues that the BIA has unreasonably prolonged the process of probating Jacobson's estate. The Court concludes, however, there exists no federal statutory or regulatory provision requiring that the BIA complete the probate process within a prescribed time frame. Therefore, there exists no legal authority with which the Court could compel the BIA to comply in terms of completing the probate of Jacobson's estate in a timely manner.

## IV. CONCLUSION

Based on the foregoing, the Court recommends that the BIA's Rule 12(b)(1) motion to dismiss be GRANTED, and this action be DISMISSED for lack of jurisdiction as moot.

DATED this 18th day of February, 2015.

_____
Jeremiah C. Lynch
United States Magistrate Judge